# OLASOV + HOLLANDER LLP

[address illegible]
New York, New York [illegible]
Tel: (212) 986-0540
Fax: (212) 202-4848

David M. Olasov
Partner
646 898 2079 Direct Dial
dolasov@olasov.com

**MEMO ENDORSED** 2/28/17

1. Based on the Taupita 30(b)(6) deposition (Ex E), the EFG deposition will take place in New York.

2. Disc conf. 3/7 at 10AM.

**SO ORDERED**

Hon. Andrew Jay Peck
United States Magistrate Judge

cc: All counsel
[signature] Engelmayer

February 28, 2017

**VIA Electronic Filing**

Hon. Andrew J. Peck
United States Magistrate Judge
Southern District of New York
United States Courthouse, Room 500 Pearl Street
New York, NY 10007

BY ECF

Re.: Taupita Investments, Ltd. et al. v. Benny Ping Wing Leung et al.
Civil Action No. 14 CV 9739 PAE-AJP

Dear Magistrate Judge Peck:

We represent Benny P. Leung ("Leung") and First Toronto Realty Corp. ("First Toronto"), defendants, counterclaim plaintiffs and third-party plaintiffs in the referenced action.

I apologize for our continuing to consume a disproportionate share of the Court's resources, but we are writing as a matter of some urgency because of extraordinary developments in discovery last week in the litigation that reflect, in our view, litigation misconduct of the highest order by plaintiff Taupita Investments, Inc. ("Taupita") and EFG Bank & Trust (Bahamas) Ltd. ("EFG") and their counsel relating to the fraud claims asserted by Taupita. These matters also affect motions pending before Judge Engelmayer to dismiss the defendants' counterclaims and the amended third-party complaint against EFG as well as the viability of the fraud claims asserted by Taupita.

Throughout this litigation, including as recently as last week, Taupita maintained that it had "all rights, title and interest" in the $1,500,000 note that Lawrence Wosskow purportedly sold to Taupita and that EFG was not a proper party. We now know that this was false, and that Taupita and EFG have gone to unacceptable lengths to conceal the truth from the Court and the defendants.

In this letter, in accordance with Section 2 of Your Honor's individual rules, we seek three items of discovery relief:

Honorable Andrew J. Peck
February 28, 2017
Page 2

First, reconsideration of the Court's direction that the defendants must examine EFG in Nassau, Bahamas at the defendants' expense, in light of Taupita's testimony last Wednesday that:

(a) Taupita is a mere "designee" of the $1,500,000 note that is still registered in the name of Lawrence Wosskow ("Wosskow");

(b) Taupita has no interest in the note and did not purchase the note from Wosskow;

(c) EFG controls the litigation and is paying for it;

(d) Taupita and EFG made the decision, on the advice of their lawyers, not to complete the process required by the consent to transfer agreement (Exhibit O to the Second Amended Complaint), which would include the delivery of the original note for cancellation, Taupita's execution and delivery of Note Purchase Agreement, and the delivery of an opinion of counsel; and

(e) Taupita and EFG and their counsel went to extraordinary lengths to conceal from the Court and the defendants that EFG structured its transaction with Wosskow in July 2013 not as a "purchase" by Taupita, but as a non-recourse, no interest loan by EFG secured by a pledge of the Wosskow note to EFG itself, which is the Loan Facility Agreement, whose production plaintiffs' counsel resisted;

Second, Your Honor's direction that Taupita reappear for its Rule 30(b)(6) deposition in light of its counsel's disrupting the ordinary conduct of the deposition, by directing the witness not to answer questions and by engaging in protracted speaking objections with the evident purpose and effect of influencing and limiting the witness's testimony concerning EFG and claims in Taupita's complaint, all in derogation of Fed. R. Civ. P. Rule 30(c)(2);

Third, EFG's and Taupita's production of the original $1,500,000 Wosskow note and the other original documents requested for production in Request 22 of Defendants' First Request for the Production of Documents, for inspection and use during the EFG and Taupita depositions, plaintiffs and EFG's counsel having ignored Request 22 and

Honorable Andrew J. Peck
February 28, 2017
Page 3

>emails prior to the Taupita depositions reminding them to produce the
>originals at the Taupita deposition.

Based on our experience to date, there is a significant prospect that the EFG deposition will require the active intervention of the Court to keep it on track and taking the EFG deposition or a resumption of the Taupita deposition in Nassau, Bahamas would complicate, or frustrate, that function.

Defendants also intend to seek sanctions for plaintiffs' counsel's engaging in misconduct, in violation of 28 U.S.C. §1927, among other matters, which provides that an attorney that "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." We construe Your Honor's individual rules (¶¶ 1 and 2) to require an application for such relief to be made by regular motion, rather than by letter application. Some of the misconduct relates to discovery proceedings, over which Your Honor has jurisdiction, while other elements have to do with Taupita's and EFG's continuing insistence in their pleadings and in motion practice before Judge Engelmayer that Taupita held "all rights, title and interest" in the Wosskow Cathexis note and that EFG was not a proper party in this litigation. The defendants thus need guidance from Judge Engelmayer and Your Honor as to before whom the motion should be made. This is important for the efficient management of this case and the conservation of judicial resources, as well as the practical matter that the defendants cannot afford the expenditure of their currently limited resources in making overlapping motions to Judge Engelmayer and to Your Honor.

**Prior Proceedings**

In each of the three iterations of its complaint, Taupita consistently alleged that "Taupita is a Bahamian entity that holds all rights, title and interest in a promissory note executed and guaranteed by Leung's controlled entities related to a purported real estate investment in China." *E.g.*, Second Amended Complaint, ¶3. After satisfying all of the notice conditions imposed by Rule 17(a) to give an opposing party the opportunity to cure a mistake, which Taupita and its counsel rejected, the defendants moved on March 18, 2015 to dismiss the action as against Taupita for failure to prosecute in the name of the real party in interest on the grounds that the real party in interest of the claims asserted in Taupita's name is EFG and EFG and Taupita had been given timely notice of the defendants' objection thereto and had been allowed but declined to cause EFG to ratify, join, or be substituted into the action. Taupita opposed this motion on the grounds that the factual allegations of the complaint needed to be accepted as true. Judge Torres denied the motion to dismiss pursuant to Rule 17(a) without prejudice. Transcript of oral decision, June 30, 2016 at 17.

In its initial disclosure statement under Rule 26 Taupita did not disclose the existence of the Loan Facility Agreement between EFG and Wosskow, which would

Honorable Andrew J. Peck
February 28, 2017
Page 4

have established that Taupita had no legal or beneficial interest in the Wosskow note and other matters injurious or fatal to Taupita's claims.

In its First Request for the Production of Documents, the defendants requested the production of:

> All documents concerning communications between EFG or Taupita and Lawrence Wosskow concerning his sale of the Transaction Note held by him to EFG or its designee or Taupita and any threat or promise to commence litigation against EFG if it refused to purchase such Note, including without limitation, representations or statements made by EFG concerning the investment represented by such Note, the satisfaction of express conditions to the transfer of such Notes by Wosskow to EFG or its designee, and the payment for such Note by or on EFG's behalf.
>
> All documents concerning compliance by EFG or Transaction Noteholders with express conditions to the transfer of Notes, including without limitation any determination by EFG or any other person not to comply with all such express conditions in connection with any proposed transfer.
>
> All documents concerning communications between EFG or Taupita and Defendants or Cathexis or Sirius concerning the transfer of Transaction Notes to Wosskow or the transfer of a Transaction Note by Wosskow to EFG or Taupita, including without limitation, representations or statements made by EFG concerning the investment represented by such Notes, the satisfaction of express conditions to the transfer of such Notes to or from Wosskow and to EFG or its designee, and the payment for such Note by or on EFG's behalf.
>
> The originals of the documents concerning the Transaction Notes with reference to Lawrence Wosskow, including the original Note issued to Wosskow and the transfer documents concerning the same and copies of all alterations of same.

Defendants' First Request for the Production of Documents, Requests Nos. 19 – 22.

Plaintiffs did not produce the Loan Facility Agreement in response to any of these requests. Had Lawrence Wosskow not returned my telephone call, erroneously believing that I was an attorney for EFG, neither the Court nor we would ever have learned of the existence of the document he referred to as a "confidentiality agreement".

Honorable Andrew J. Peck
February 28, 2017
Page 5

### Misrepresentations concerning the Loan Facility Agreement

Had Your Honor not directed the production of the document Mr. Wosskow remembered as a "confidentiality agreement," in the face of what we believe to have been material misrepresentations concerning the Loan Facility Agreement by Taupita's counsel at the February 21, 2017 status conference before the Court (the day immediately preceding the Rule 30(b)(6) deposition of Taupita), neither the Court nor our firm ever would have learned of the existence of the Loan Facility Agreement. In an effort to dissuade Your Honor from directing the production of the document that he did not identify as the Loan Facility Agreement, plaintiffs' counsel made several material misrepresentations. After acknowledging the existence of a confidentiality agreement, Mr. Waldman gave a false account of the purpose and scope of the agreement:

> THE COURT: What is the reason for it and what does it provide, in essence?
>
> MR. WALDMAN: There were a number of issues that Mr. Wosskow had with EFG, all of which were resolved without the necessity of litigation a number of years ago and as part and parcel of that resolution there was a confidentiality agreement entered between Mr. Wosskow and EFG.

February 21, 2017 Hearing Transcript, at 13, lines 14 – 24.

> MR. WALDMAN: ***In response to the request for production, we produced all emails and other documents regarding Mr. Wosskow and his dealings. What we did do was redact certain things that dealt with completely different transactions which had nothing to do with this situation at all, and that's the only thing we have done. We have held back no documents.
>
> THE COURT: To be clear, that includes any and all documents that Mr. Wosskow gave you relating to these notes?
>
> MR. WALDMAN: Yes. He didn't give us anything. He didn't really give us anything.

February 21, 2017 Hearing Transcript, at 16, lines 13 – 24.

> THE COURT: *** Did you redact anything about Mr. Wosskow or from Mr. Wosskow about the notes?
>
> MR. WALDMAN: Absolutely unequivocally no.

February 21, 2017 Hearing Transcript, at 17, lines 22 – 24. Copies of relevant excerpts of the February 21 Hearing Transcript are attached as Exhibit A.

Honorable Andrew J. Peck
February 28, 2017
Page 6

   Your Honor directed production of the confidentiality agreement, without any suggestion that it could be redacted. February 21, 2017 Hearing Transcript, at 14, lines 23 – 24. At no point in the colloquy with the Court did Mr. Waldman acknowledge that the entire "confidentiality agreement" related to the Wosskow note.

   In a last ditch effort to avoid production, plaintiffs' counsel produced at the Taupita deposition the following day a heavily redacted version of the Loan Facility Agreement. Deposition Ex. 4a. During the deposition I sent Jeffrey Lam an email with the following message:

> The Magistrate Judge told you to produce the document, not a redacted form of the document. You did not tell him that you intended to produce only part of the document. I shall telephone chambers to seek further instructions if you do not promptly produce the entire agreement.

Mr. Lam responded with the following email message:

> The instruction was to produce the confidentiality agreement to show you there was an agreement in place between Wosskow and EFG. We have done that. The "confidentiality agreement" is incorporated in a larger agreement you are not entitled to and the Judge did not order us to produce.

I immediately telephoned chambers and provided Your Honor's law clerk by email with a copy of the heavily redacted document. Fortunately, the Court's schedule permitted Your Honor to hear the parties.

   In the telephonic proceedings before the Court, I read into the record the witness' testimony that "the document by which Taupita was entitled to be placed in Mr. Wosskow's shoes is a confidential agreement between Mr. Wosskow or [sic] EFG or its assigns" and identifying this document as "a confidentiality agreement." February 22, 2017 Telephonic Hearing Transcript, Tr. 6 at lines 10 – 19. Mr. Lam asserted that the talk on February 21 was "just over whether Mr. Wosskow may disclose certain information" (Transcript, at p. 7, line 9 - 24). After other exchanges in which counsel for the plaintiffs and EFG did not show candor about the scope of the confidentiality agreement, the Court examined the witness who finally acknowledged that the document related to the Wosskow note (Transcript, at p. 12, lines 13 – p. 14, line 19. In the end Your Honor correctly recalled Mr. Waldman's unequivocal assurances that EFG had produced everything and had redacted nothing relating to the Wosskow notes. Counsel's conduct cannot be reconciled with their representations to the Court.

   Had the Court not directed the production of the unredacted Loan Facility Agreement in the face of further material misrepresentations by Taupita's counsel concerning the Agreement (February 22, 2017 Telephonic Hearing Transcript, at p. 14, lines 16 – 17), the Court and the defendants would still be in the dark about the very strange transaction documented in the Loan

Honorable Andrew J. Peck
February 28, 2017
Page 7

Facility Agreement. Copies of relevant excerpts of the February 22 Telephonic Hearing Transcript are attached as Exhibit B.

We do not believe that the wholesale redactions were made in good faith by EFG's and Taupita's counsel as officers of this Court admitted *pro hac vice*. Copies of the unredacted Loan Facility Agreement and of the redacted document were marked as Deposition Exhibits 4 and 4a, respectively at the Taupita deposition last Wednesday and are collectively attached for the Court's reference as Exhibit C.

Taupita's counsel also interrupted the witness's testimony about the Loan Facility Agreement with speaking objections (*e.g.*, Deposition Tr. at 21 – 22, 29) and directed the witness not to testify (*e.g.*, Tr. at 52 - 54) about Wosskow's demands that EFG repurchase his notes and his threats to sue EFG because of material misrepresentations by EFG's customer relations officer in inducing Mr. Wosskow to purchase the $1,500,000 in notes on the basis that they were secured by customer deposits at the Bank of China and could not be released without repayment of the Cathexis notes. Two exemplars of email chain exchanges between Wosskow and EFG are attached for the Court's reference as Exhibit D. To facilitate electronic filing, copies of cited excerpts of the transcript of the February 22, 2017 deposition of Taupita are attached for the Court's reference as Exhibit E. We shall provide chambers with a complete transcript of the deposition for Your Honor's review.

**The Loan Facility Agreement in Response
to Wosskow's Threats to Sue EFG**

At this juncture we can only rely on the documents themselves to inform the Court and us. In a series of emails in 2013 Wosskow claimed that EFG had defrauded him by making statements that the notes of other customers they wanted him to purchase were secured by $50,000,000 in customer deposits against unit purchase agreements, with the deposits being held by the Bank of China. (There were material customer deposits at the Bank of China, but they did not secure the Cathexis notes.) See Exhibit E hereto (two exemplars of email chain communications between Wosskow and EFG). In a June 18, 2013 letter EFG flatly rejected Mr. Wosskow's claims. A copy of this letter is attached as Exhibit F. However, by July 3, 2013 EFG had agreed to acquire his Cathexis note for an amount, including interest at 15%, equal to $2,049,000. This apparently represented payment in full on Mr. Wosskow's claim. A copy of the July 3, 2013 letter calculating the amount of the payment is attached as Exhibit G. The reasonable inference to draw from this series of exchanges is that EFG concluded that the Bank had material exposure to Wosskow for its own conduct.

EFG did not simply pay Mr. Wosskow for his note. It structured the transaction to buy his silence. The Loan Facility Agreement was treated as a single advance, non-interest bearing, non-recourse loan. Wosskow's Cathexis note was treated as *pledged* to EFG itself as security for the non-recourse loan. EFG reserved the right at any time to have the note registered in *its* name, not Taupita's, and was given the power of attorney to control the note. Exhibit C (assignment provisions). The hook against Wosskow was that the facility loan became a recourse obligation if he did not maintain his silence:

Case 1:14-cv-09739-PAE-AJP Document 140 Filed 02/28/17 Page 8 of 9
Case 1:14-cv-09739-PAE-AJP Document 139 Filed 02/28/17 Page 8 of 9

Honorable Andrew J. Peck
February 28, 2017
Page 8

> The Borrower agrees that he shall keep in strict confidence the details of this Agreement or the fact that it was made and shall not disclose to any third person whatsoever any information relating to his dealing with the Bank or any present or past employee of the Bank concerning any role played by the Bank or its employee in his investment in the purchase of the Note issued by Cathexis Holding (Cayman) Ltd to him. Any breach of this provision prior to the termination of this Facility will render the Loan immediately due and payable, and it shall then cease to be a non-recourse loan. It is agreed that this provision shall survive the termination of this Facility and the Bank shall be entitled to damages for any subsequent breach of this provision.

Exhibit C, Loan Facility Agreement (confidentiality provisions).

The Loan Facility Agreement cannot be squared with the allegation in the Complaint of Taupita's ownership of "all rights, title and interest" and EFG's denial of ownership as the real party in interest. It also cannot be squared with the consent to transfer agreement among Wosskow, Taupita and Cathexis (Exhibit O to Second Amended Complaint), which says nothing about EFG. In an attempt to deal with this problem, EFG and Taupita, on advice of counsel, decided that Taupita would not complete the process of having Wosskow's note registered in the name of Taupita, which would be inconsistent with the Loan Facility Agreement. Taupita Deposition Tr., at pp. 35 – 36, 39 – 42, 45. And it could not ask Cathexis for its consent to transfer the note to EFG because EFG was already in breach of the Note Purchase Agreement's contractual strictures against proceeding against assets other than Cathexis' or suing shareholders or officers of Cathexis or its affiliates. The Taupita witness acknowledged that Taupita itself had no "right under any document to exercise remedies under the Wosskow note." Tr., at p. 57. The cover-up thus became worse than the original lies.

Defendants' First Request for the Production of Documents sought production of the original Wosskow note. Request No. 22, above. Counsel for defendants sent plaintiffs' counsel more than one email requesting that the original be produced at the Taupita deposition. It was not produced; the Taupita witness testified that the original note was in the possession either of EFG or its counsel. Taupita Deposition Tr., at p.    .

The 30(b)(6) deposition of Taupita last Wednesday became a discovery outrage in its own right. The Taupita witness is EFG's chief administrative officer. Tr., at p. 5. She acknowledged under oath her authority to speak for Taupita. Tr., at p. 11. Taupita was organized in or around July 2013 "as a special purpose entity to hold an interest in the note arrangement that Cathexis had with an account holder with EFG." Tr., at p. 8. EFG is the sole shareholder of Taupita. *Id.* Taupita never had any dealings with Cathexis or Benny Leung. Tr., at p. 18. Taupita did not pay for the Wosskow note and was a "designee" and had no financial interest in the note. Tr., at p. 35. Although the Second Amended Complaint is a recitation of alleged dealings between EFG and Leung, Taupita purports to allege claims that prior noteholders might have had, and prior to Taupita's own formation. Without regard to whether

Honorable Andrew J. Peck
February 28, 2017
Page 9

Taupita was assigned any such choses in action. Taupita's counsel directed its witness not to answer questions on the grounds that the witness was appearing as Taupita's witness (that is, the plaintiff) and not as EFG's witness, or that the facts in issue preceded Taupita's organization in 2013, thus placing Taupita's allegations in the Second Amended Complaint beyond examination. *See, e.g.*, Deposition Tr. at p. 52 – 54. The objections and directions of plaintiffs' and EFG's counsel to the Taupita witness not to answer questions violated Fed. R. Civ. P. Rule 30(c)(2) which requires that "an objection must be stated concisely in a nonargumentative and nonsuggestive manner," and permits instructions to "a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or present a motion under Rule 30(d)(3)," none of which were implicated in any way.

In order to expedite these matters, we respectfully request a conference before the Court at Your Honor's early convenience.

Respectfully yours,

David M. Olasov

cc: Hon. Paul A. Engelmayer
    Glen H. Waldman, Esq.
    Jeffrey Lam, Esq.
    Jon Quint, Esq.